**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**MICHAEL KELLER,**
**Claimant Below, Petitioner**

**vs.)    No. 19-0094** (BOR Appeal No. 2053270)
                              (Claim No. 2015033220)

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Murray American Energy, Inc., by counsel M. Jane Glauser, appeals the decision of the West Virginia Workers' Compensation Board of Review. Murray American Energy, Inc., by its attorneys Denise D. Pentino and Aimee M. Stern, filed a timely response.

The issue on appeal is vocational rehabilitation benefits. The claims administrator closed the claim for vocational rehabilitation services on February 5, 2018. The Office of Judges reversed the decision in its August 8, 2018, Order and ordered that the claim remain open for vocational rehabilitation services and that temporary total disability benefits be paid until completion of the rehabilitation plan. This appeal arises from the Board of Review's Order dated January 7, 2019, in which the Board of Review reversed and vacated the Order of the Office of Judges. The Board of Review reinstated the February 5, 2018, Order of the claims administrator which closed the claim for vocational rehabilitation services.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15 (2005) (Repl. Vol. 2010), in relevant part, as follows:

1

(b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions[.]

. . . .

(d) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning and conclusions, there is insufficient support to sustain the decision. The court may not conduct a de novo re-weighing of the evidentiary record. . . .

*See Hammons v. West Virginia Office of Ins. Comm'r*, 235 W. Va. 577, ___, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a *de novo* standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. West Virginia Office of Insurance Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011). With these standards in mind, we proceed to determine whether the Board of Review committed error in reversing the decision of the Office of Judges.

Mr. Keller, a coal miner, injured his right shoulder and back while pulling on hoses in the course of his employment on June 3, 2015. The claim was held compensable for sprain of unspecified site of shoulder and upper arm and thoracic sprain. On September 2, 2015, Allan Tissenbaum, M.D., performed surgical arthroscopy, debridement of chondral damage, debridement of biceps, and an open subscapularis repair on the right shoulder. Dr. Tissenbaum treated Mr. Keller for postoperative right shoulder pain on December 4, 2015, and on January 15, 2016, it was noted that his right shoulder was not improving. Dr. Tissenbaum concluded that the condition was either recurrent or it never healed properly. He recommended additional surgery which was performed on April 5, 2016. Although Mr. Keller underwent physical and occupational therapy, it was noted that the therapy provided little improvement.

Joseph Grady, M.D., performed an independent medical evaluation on September 8, 2016, in which he diagnosed status post right shoulder surgery for rotator cuff tears and humeral head chondral injury with biceps injury and debridement. Dr. Grady recommended 6% whole person impairment. The claims administrator suspended temporary total disability benefits on September 16, 2016, based on Dr. Grady's report.

The claims administrator referred Mr. Keller to Erin Saniga, M.Ed., CRC, LPC, for a rehabilitation evaluation to determine if he could benefit from rehabilitation services. On November 2, 2016, Ms. Saniga prepared a rehabilitation plan where Mr. Keller was to undergo a

2

functional capacity evaluation and be paid rehabilitation temporary total disability benefits until December 9, 2016.

In an initial vocational report dated November 28, 2016, Ms. Saniga stated that the goal of rehabilitation was to return Mr. Keller to work in an appropriate position. His target return to work date was January of 2017. Curt Neel, PT, performed a functional capacity evaluation on December 1, 2016, and noted that Mr. Keller gave maximum effort on all tests. However, his physical limitations were found to prevent him from returning to work unless modifications to his job duties could be made. Mr. Neel found no appropriate job matches.

On December 15, 2016, the claims administrator approved vocational rehabilitation benefits from December 10, 2016, through January 8, 2017. Vocational rehabilitation services notes from Allegiant Managed Care indicate Mr. Keller was to complete vocational exploration, a functional capacity evaluation, and job retention training. On December 26, 2016, Mr. Keller's goal was to return to work for the same employer but in a different position. By January 26, 2017, the goal was to return to work with a different employer.

The claims administrator suspended vocational rehabilitation benefits because the ninety days of job searching ended on April 8, 2017, and a closure report dated April 19, 2017, indicates that no further services were recommended. The claim was closed for vocational rehabilitation benefits on May 8, 2017.

In an August 28, 2017, letter, Ms. Saniga opined that Mr. Keller was employable, that he had the skills necessary to seek and apply for employment, and that he did not require formal training. She also found that there was suitable employment available to him in his labor market. However, she recommended file closure because Mr. Keller no longer required assistance in seeking and applying for employment.

On October 30, 2017, the Office of Judges reversed the claims administrator's closure of the claim for vocational rehabilitation services. It ordered that the claim remain open for vocational rehabilitation services and that the claims administrator formulate a plan for rehabilitation. The Office of Judges also ordered that temporary total disability benefits be paid until completion of the rehabilitation plan or rejection of the plan by Mr. Keller.[1]

By Order of the claims administrator dated November 8, 2017, vocational rehabilitation benefits were approved based on the decision of the Office of Judges. The benefits were to be paid from October 30, 2017, through December 27, 2017. The claims administrator stated that the benefits would be terminated if Mr. Keller did not fully participate in the plan.

---

[1] This decision was reversed by Order of the Board of Review dated July 24, 2018. The Board's decision was appealed and affirmed by this Court in *Murray American Energy, Inc. v. Keller*, No. 18-0740, 2019 WL 4165290 (W. Va. Sept. 3, 2019) (memorandum decision).

A Rehabilitation Plan was prepared on November 21, 2017, with a goal to assist Mr. Keller with returning to work in an appropriate position by developing skills necessary to seek and obtain appropriate employment. Mr. Keller was to participate in job placement from November 27, 2017, to December 27, 2017. He was to be paid rehabilitation temporary total disability benefits for that same period of time.

In correspondence from Ms. Saniga dated January 15, 2018, Mr. Keller was advised that his file with Allegiant Managed Care was being closed. Ms. Saniga stated that the closure of the file does not affect any medical treatment/benefits that he may seek in the future. By Order of the claims administrator dated January 17, 2018, Mr. Keller was advised that rehabilitation benefits were suspended based on Ms. Saniga's letter. It was stated that the claim would be closed on February 4, 2018, for rehabilitation benefits unless additional evidence was received which substantiated continuation of the benefits.

A Closure Report dated January 18, 2018, prepared by Ms. Saniga concluded that no further services were recommended. She stated that no documentation of applications submitted had been received by her office since the expiration of the most recent plan dated December 27, 2017. Ms. Saniga believed that given the income afforded to Mr. Keller by Social Security Disability, he has little incentive to seek and obtain alternate employment. She advised that the goal of the current rehabilitation plan to assist Mr. Keller with returning to work in an appropriate position by developing the skills necessary to seek and obtain appropriate employment had been met.

On February 5, 2018, the claims administrator closed the claim for vocational rehabilitation benefits. The claims administrator stated that the reason for the suspension of benefits was that additional evidence had not been received to substantiate the continuation of benefits. Mr. Keller protested the claims administrator's decision.

The Office of Judges reversed the claims administrator's February 5, 2018, Order in a decision dated August 8, 2018. The Office of Judges found that Mr. Keller showed that the claims administrator erred in closing his claim for further vocational rehabilitation services because he complied with the latest rehabilitation plan. The Office of Judges concluded that the claim should remain open for vocational rehabilitation services with another vocational plan formulated regarding the same, pursuant to No. 6 of the Hierarchy for Vocational Rehabilitation Services, within ninety days of the date of the Order. It was further ordered that Mr. Keller would be paid temporary total disability benefits pursuant to West Virginia Code § 23-4-9 from the date of the current Order until completion of the rehabilitation plan or rejection of the plan by Mr. Keller.

On January 7, 2019, the Board of Review found the Order of the Office of Judges to be clearly wrong in view of the reliable, probative and substantial evidence on the whole record. In determining whether Mr. Keller's claim was properly closed for vocational rehabilitation services, the Board of Review examined West Virginia Code § 23-4-9(b) and West Virginia Code § 23-4-9(c), which provide, in relevant part:

(b) In cases where an employee has sustained a permanent disability, or has sustained an injury likely to result in temporary disability as determined by the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, shall at the earliest possible time determine whether the employee would be assisted in returning to remunerative employment with the provision of rehabilitation services and if it is determined that the employee can be physically and vocationally rehabilitated and returned to remunerative employment by the provision of rehabilitation services including, but not limited to, vocational or on-the-job training, counseling, assistance in obtaining appropriate temporary or permanent work site, work duties or work hours modification, by the provision of crutches, artificial limbs or other approved mechanical appliances, or medicines, medical, surgical, dental or hospital treatment or other services which the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, in its sole discretion determines will directly assist the employee's return to employment, the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, shall immediately develop a rehabilitation plan for the employee and, after due notice to the employer, expend an amount necessary for that purpose.

(c) In every case in which the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, orders physical or vocational rehabilitation of a claimant as provided in this section, the claimant shall, during the time he or she is receiving any vocational rehabilitation or rehabilitative treatment that renders him or her totally disabled during the period of rehabilitation, be compensated on a temporary total disability basis for that period.

The Board of Review determined that Ms. Saniga noted on November 22, 2017, that Mr. Keller told her that he was awarded Social Security Disability benefits in April of 2017. She further stated that he has little incentive to obtain alternate employment, given the award of Social Security Disability benefits. The Board of Review concluded that there is no indication at the present time that Mr. Keller would be assisted in returning to remunerative employment with the aid of rehabilitation services. Consequently, the August 8, 2018, decision of the Office of Judges was reversed and vacated. The claims administrator's Order dated February 5, 2018, which closed the claim for vocational rehabilitation services was reinstated. The Board of Review stated that its ruling does not preclude Mr. Keller from requesting vocational rehabilitation services/benefits in the future.

After review, we agree with decision of the Board of Review. The preponderance of the evidence demonstrates that Mr. Keller requires no further rehabilitation services to return to remunerative employment. Ms. Saniga, a licensed professional counselor and certified rehabilitation counselor, concluded after conducting a vocational analysis that Mr. Keller was qualified for, and physically capable of performing, multiple residual career options. It was her

professional opinion that the goal of the current rehabilitation plan was met. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:** April 23, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton